# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

№ 07-CV-2408 (JFB) (AKT)

————————————

AUDREY J. SAUNDERS,

Plaintiff,

VERSUS

DONNA LUPIA, PHYLLIS LIBRETTI, JOYCE MARTO, JOANNE BOSCO,
AND CHRISTINE WOOD,

Defendants.

————————————

**MEMORANDUM AND ORDER**
August 17, 2009

————————————

JOSEPH F. BIANCO, District Judge:

Audrey J. Saunders, plaintiff *pro se*, brought the instant case, alleging violation of her rights under the Fourteenth Amendment of the Constitution and the Whistleblower Protection Act of 1989 "in conjunction with" the First Amendment of the Constitution, related to events surrounding the conditions of her employment with the Internal Revenue Service ("IRS"). Defendants move to dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants the defendants' motion, and dismisses plaintiff's complaint.

## A. Facts

The following facts are taken from the complaint ("Compl.") and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion, and are construed in a light most favorable to plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005).

On or about September of 2004, plaintiff, an African-American female, was employed by the IRS, and transferred from the IRS Service Center in Cincinnati, Ohio to Holtsville, New York. (Compl. p. 2.)[1] At the

———————————

[1] The complaint consisted of a completed eight-page form given to *pro se* plaintiffs in the United States District Court for the Eastern District of Kentucky, where this action was initially filed. Citations in this opinion to the complaint are made by page number, because the form does not include numbered paragraphs. In addition to the form, the plaintiff attached three additional pages

IRS, plaintiff's work consisted of "processing applications received by telephone, by fax, by mail, or over the internet." (*Id.*) Plaintiff alleges that, shortly after being transferred to Holtsville, she was subject to a hostile work environment by Donna Lupia, her supervisor, Phyliss Libretti, Lupia's supervisor, and three other managers, Joanne Bosco, Christine Wood and Joyce Marto. (Compl. pp. 2-3.) Plaintiff alleges that she was subject to continued harassment between September 2004 and her resignation on July 25, 2005. (Compl. p. 2.)

Plaintiff decries being subject to three specific "surprises" on July 1, 2005. (Compl. p. 2, 9.) First, plaintiff alleges that Lupia's team at the Holtsville Center had what she alternatively calls the "Birthday Club" or "Sunshine Club," in which members would make weekly donations into a common fund that would be used to pay for office birthday parties. (Compl. p. 3.) Plaintiff made it plain to her supervisors and co-workers that she did not want to participate in this arrangement, and refused to pay dues. (*Id.*) Plaintiff voluntarily abstained from eating any of the food that was provided at office birthday parties. (*Id.*) On July 1, 2005, plaintiff was "angered and embarrassed" when, against her explicit wishes, she received a "surprise" birthday card from Lupia's team. (Compl. p. 9.)

Second, later on July 1, 2005, plaintiff was notified by Bosco that she would be furloughed effective close of business. (*Id.*)

Plaintiff's third claimed "surprise" was that she was presented with a letter on the same day that provided her with notice that the IRS was

considering terminating her for poor performance. (*Id.*) [2]

Plaintiff asserts that her performance issues are related to the fact that she was being monitored "selectively," and was being "set up for failure." (*Id.*) She felt "watched," which made her nervous, and caused her to commit more mistakes on the job. (*Id.*) Plaintiff also alleges that her relationship with Lupia deteriorated over time because of opposing viewpoints regarding job-related issues, as well as retaliation for a complaint that she made to the Equal Employment Opportunity ("EEO") Office.[3] Finally, plaintiff broadly asserts that she was unable to function effectively at her job because of race discrimination – alleging that her "ability to function effectively in my position at Holtsville was only exacerbated by the realization that Long Island is the third most segregated community in the entire United States." (Compl. p. 11.) (emphasis omitted). Plaintiff notes that there was only one other

---

[2] Plaintiff attached a copy of this letter to the complaint, which is dated June 28, 2005, and includes a handwritten note signed by Marte, indicating that the letter was given to plaintiff on June 30, 2005. In connection with a motion to dismiss under Rule 12(b)(6), the Court generally may consider "facts stated in . . . documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Thus, the Court considered this document.

[3] Plaintiff's allegation regarding retaliation based upon filing a grievance with the EEO was not part of the complaint, but included within one of her attachments to the complaint, in an undated letter entitled "Summary," which the Court has considered.

---

to continue responses from the form, which are cited as pages nine through eleven in this opinion.

minority employed on Lupia's team, who did not have performance issues despite having a "very thick accent" and his language not being "fluent or smooth." (*Id.*)

Plaintiff alleges that she was "coerced" into resigning on July 29, 2005. (*Id.*)

## B. Procedural History

On March 30, 2007, plaintiff filed the instant action in the United States District Court for the Eastern District of Kentucky. By Order dated June 8, 2007, the Honorable William O. Bertelsman ordered that the case be transferred to this court. The case was initially assigned within the Eastern District of New York to the Honorable Dora L. Irizarry on June 14, 2007, and reassigned to the undersigned on July 16, 2007. Defendants moved to dismiss the complaint on September 3, 2008. After granting three extensions to plaintiff to file an opposition, plaintiff filed a letter dated November 17, 2008, setting forth her opposition to the motion. By letter dated November 25, 2008, defendants notified the court that they were waiving their right to file a reply brief and intended to rest on their moving papers. Plaintiff has not made any further submissions in connection with the instant case to this Court. This matter is fully submitted.

## II. STANDARD OF REVIEW[4]

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

---

[4] Although defendants, in addition to moving under Rule 12(b)(6), makes the motion under Rule 12(b)(1) for lack of subject matter jurisdiction on any Title VII claim asserted by plaintiff because it is time-barred, it is well-settled that the timing requisites of Title VII claims are not jurisdictional and, thus, subject to, among other things, equitable tolling. *See Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir. 1998) ("'[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional

prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'") (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *accord Daniel v. Long Island Housing P'ship, Inc.*, No. 08-CV-1455 (JFB), 2009 WL 702209, at *4 n.2 (E.D.N.Y. Mar. 13, 2009); *see also Harris v. Giant Eagle Inc.*, 133 Fed. Appx. 288, 292, 2005 WL 1313147, at *3 n.1 (6th Cir. May 27, 2005) ("The ninety-day requirement of § 2000e-5(f)(1) is not jurisdictional.") (citing *Seay v. TVA*, 339 F.3d 454, 469 (6th Cir. 2003)); *Dashan, M.D. v. Okla.*, No. 08-CV-370 (TCK), 2008 WL 4899240, at *4 (N.D. Okla. Nov. 12, 2008) ("Because timeliness of an EEOC charge is not a jurisdictional requirement, this aspect of the Motion to Dismiss is pursuant to Rule 12(b)(6).") Thus, the Court analyzes defendants' motion with respect to any Title VII claims under the Rule 12(b)(6) standard.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth a two-pronged approach for courts deciding a motion to dismiss. *See* 129 S.Ct. at 1937. The Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant*, "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally. . . . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings. . . . This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." 537 F.3d 185, 191 (2d Cir. 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se,*

the Court shall " 'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ") (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (alterations in original)); *accord Sharpe v. Conole*, 386 F.3d 483, 484 (2d Cir. 2004).

## III. DISCUSSION

According to the complaint, the *pro se* plaintiff seeks relief pursuant to: (1) the Fourteenth Amendment to the United States Constitution; and (2) the Whistleblower Protection Act of 1989 "in conjunction with" the First Amendment of the Constitution. Plaintiff's injuries, however, arise out of her claims that she was subject to a hostile work environment and constructively discharged from her employment at the IRS Service Center in Holtsville, New York, because of race discrimination and retaliation for filing a complaint with the EEO.

These two causes of action must be dismissed because it is well-settled that as a federal employee, plaintiff may only seek relief for employment discrimination and retaliation solely through a Title VII claim. *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002) ("Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, is the exclusive remedy for discrimination by the federal government on the basis of race, religion, sex, or national origin."); *accord Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996); *Smith v. Potter*, No. 07-CV-1787 (JG), 2008 WL 4371364, at *4 (E.D.N.Y. Sept. 19, 2008) ("As a federal employee, [plaintiff] may only seek relief for employment discrimination and retaliation solely through Title VII.").

However, in an abundance of caution, because this court construes the *pro se*

complaint broadly to assert the strongest arguments that it may suggest, *Sealed Plaintiff,* 537 F.3d at 191, the court proceeds to consider plaintiff's allegations as if she properly pled them under Title VII.[5]

As a threshold matter, plaintiff's Title VII claims against the defendants, who are all individuals employed at the IRS, must be dismissed because it is well-established that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds*, *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998); *see also Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (affirming dismissal of Title VII claims against individual defendants, "because individuals are not subject to liability under Title VII");

*Everson v. N.Y. City Transit Auth.*, No. 02-CV-1121 (ENV), 2007 WL 539159, at *18 (E.D.N.Y. Feb. 16, 2007) (dismissing Title VII claims against individual supervisor defendants); *Copeland v. Rosen*, 38 F. Supp. 2d 298, 302 (S.D.N.Y. 1999) ("[I]ndividual employees may not be held personally liable under Title VII, even if they are supervisory personnel with the power to hire and fire other employees.").

The result would be the same, assuming *arguendo* that the plaintiff had named the proper party as defendant in making her allegations for employment discrimination under Title VII,[6] because plaintiff has failed to exhaust available administrative remedies. *Mathirampuzha v. Potter,* 548 F.3d 70, 74 (2d Cir. 2008) ("Prior to bringing suit under . . . Title VII . . , a federal government employee must timely exhaust the administrative remedies at his disposal."). EEOC regulations establish the applicable administrative procedures that a federal employee must exhaust prior to filing a civil action under Title VII in federal court, which include, *inter alia,* that a federal employee:

> (1) consult with a counselor at the relevant agency's Equal Employment Office ("EEO") within 45 days of the alleged discriminatory act, *see* 29 C.F.R. § 1614.105(a)(1), and, if the matter is not resolved after a mandatory counseling period, (2) file a formal written administrative complaint ("EEO complaint") within 15 days of receipt of the EEO counselor's notice of final

---

[5] The Civil Service Reform Act of 1978 ("CSRA") provides an alternative avenue for federal employees to bring a "mixed" cause of action involving prohibited discrimination and nondiscriminatory claims under the CSRA. *See Fernandez v. Chertoff*, 471 F.3d 45, 53 (2d Cir. 2006) (aggrieved federal employee can bring claims under CSRA for "mixed" claims involving prohibited discrimination and nondiscrimination claims under the CSRA); *see also Marro v. Nicholson*, No. 06-CV-6644 (JFB), 2008 WL 699506, at *5 (E.D.N.Y. Mar. 12, 2008). To the extent that plaintiff intended to state a claim under the CSRA, as amended by the Whistleblower Protection Act of 1989, the Court is required to dismiss that cause of action for failure to exhaust administrative remedies, because this case does not involve an appealable final decision of the Merit Systems Protection Board ("MSPB"). *Blaney v. United States*, 34 F.3d 509, 512 (7th Cir. 1994) (affirming dismissal of mixed cause of action under CSRA and Title VII for failure to exhaust administrative remedies where there was no final appealable MSPB decision); *accord Ghaly v. United States Dep't of Agric.*, 228 F. Supp. 2d 283, 288 (S.D.N.Y. 2002).

[6] Under Title VII, the proper defendant in a civil action would be the Commissioner of the IRS. 42 U.S.C. § 2000e-16(c) ("[T]he head of the department, agency, or unit, as appropriate, shall be the defendant.")

interview and right to file a formal complaint ("EEO notice"), *see id.* § 1614.106 (a), (b). The employee may then file a civil action (i) within 90 days of notice of a final agency decision on his or her EEO complaint, or (ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.408(a), (b).

*Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001). These statutory filing periods are "analogous to [] statute[s] of limitations," *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996), and as such "a failure to timely file a charge acts as a bar to a plaintiff's action." *See Nat'l R.R. Passenger Corp. (AMTRAK) v. Morgan*, 536 U.S. 101, 108 (2002) ("In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'") (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

Here, plaintiff successfully completed the first step of the administrative process, by engaging an EEO counselor on or about April 2005, concerning allegations of discrimination. After this consultation, plaintiff received the EEO notice, dated May 18, 2005, which plainly notified her that she had fifteen days from receipt to file a formal complaint of discrimination.[7]

It is undisputed that plaintiff did not file such a formal complaint, within fifteen days of receiving the EEO notice, or at anytime thereafter. Thus, failure to comply with this requirement, established by 29 C.F.R. § 1614.106 (a), (b), would require dismissal of this complaint, even against the proper defendant. *See, e.g., Lamb v. Potter*, No. 08-CV-0477 (NRB), 2008 WL 3539945, at *3 (S.D.N.Y. Aug. 12, 2008) (dismissing Title VII claims because plaintiff failed to file a formal complaint within applicable 15-day period); *accord Jones v. Gonzalez,* No. 05-CV-1387 (SLT), 2007 WL 853470, at *6 (E.D.N.Y. Mar. 19, 2007) (*pro se*); *Belgrave v. Pena*, No. 98-CV-2517 (DAB), 2000 WL 1290592, at *6 (S.D.N.Y. Sept. 13, 2000), *aff'd,* 254 F.3d 384 (2d Cir. 2001).[8]

---

signed, and filed, in person or by mail within 15 CALENDAR DAYS AFTER RECEIPT OF THIS NOTICE." (Declaration of AUSA Robert B. Kambic, dated Sept. 3, 2008, ¶ 4 & Ex. B) (emphasis in original). The Court may consider this EEO document as integral to plaintiff's Title VII claim without converting the motion into a motion for summary judgment. *See, e.g., Bethea v. Equinox Fitness Club*, No. 07-CV-2018 (JSR), 2007 WL 1821103 at *1 (S.D.N.Y. June 21, 2007) (proper to rely on EEOC documents in considering motion to dismiss, even if not attached to complaint because plaintiffs rely on these documents to satisfy Title VII's time limit requirements) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.")).

[8] To the extent that the plaintiff's cause of action arises from any discriminatory acts which

---

[7] According to the first paragraph of the EEO Notice: "This is to inform you that because the matter(s) you brought to my attention has/have not been resolved to your satisfaction, you are not entitled to file a discrimination complaint. If you wish to pursue this matter further, and file a formal complaint of discrimination, it must be in writing,

However, as noted *supra*, the 15-day time limit on filing a formal complaint is treated as a limitations period subject to equitable tolling. Such deadline may be equitably tolled in "rare and exceptional circumstance[s]," *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks omitted), in which a party is "prevented in some extraordinary way from exercising [her] rights," *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (internal quotation marks and alteration omitted); *see also Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003); *Daniel*, 2009 WL 702209, at *7. "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Zerilli-Edelglass*, 333 F.3d at 80-81 (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect") (citation and quotation marks omitted). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000); *Smith v. Chase Manhattan Bank*, No. 97-CV-4507 (LMM), 1998 WL 642930, at *3

(S.D.N.Y. Sept. 18, 1998) ("[A] court must consider the equities of the excuse offered to explain the delay and may extend the limitations period if warranted.").

In the instant case, the Court finds that the plaintiff did not show that there is any sound basis for equitable tolling in connection with her failure to file a formal complaint within fifteen days of receiving the EEO notice. In her letter opposing defendants' motion, plaintiff acknowledges that she has never filed such a complaint, based on her belief that such a filing would not effectively resolve her complaints.[9] This case does not fall within one of the paradigmatic situations found to constitute an "extraordinary" circumstance, such as where an individual reasonably relies on erroneous information given to him by an administrative agency regarding a Title VII time limit. *See, e.g., Carlyle Towers Condo., Ass'n, Inc. v. FDIC*, 170 F.3d 301, 310 (2d Cir. 1999); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 146, 147 (2d Cir. 1984); *Cordero v. Heyman*, No. 97-CV-0435 (JGK), 1998 WL 730558 (S.D.N.Y. Oct. 19, 1998) (granting equitable tolling for *pro se* plaintiff where she provided formal complaint within 15-day period to defendant's EEO counselor at counselor's request, where counselor agreed to forward formal complaint to appropriate officials). Plaintiff has not made any allegation that extenuating circumstances prevented her from complying with the clear

___

occurred after she filed a grievance with the EEO counselor in April 2005 which resulted in the May 18, 2005 EEO notice, there is no allegation that plaintiff pursued any administrative remedies with respect to such discriminatory acts and, therefore, any cause of action with respect to those allegations also must be dismissed.

[9] According to plaintiff's letter, "An EEOC complaint would be essentially an 'internal investigation'. What bureaucracy– i.e., federal, state, local, or even private has been able to successfully 'police' itself without a hint of partiality or impropriety? The EEOC and management at the Internal Revenue Service appear to be essentially 'horns on the same goat.'" (Pl.'s Opp. Mem. at 8.)

deadline. *Jafri v. Rosenfeld*, No. 04-CV-2457, 2005 WL 991784, at \*6-7 (S.D.N.Y. Apr. 26, 2000) (refusing to waive the time limit where plaintiff did not argue or show "that extenuating circumstances prevented him from complying" and declining to equitably toll the time limit where the plaintiff did not show that his failure to comply with the time limit "was anyone else's fault").

Plaintiff was given a simple direction regarding this obligation, noted in plain bold lettering on the one page EEO notice, and simply refused to comply. Her excuse for defiance–essentially that such a complaint would be futile–does not constitute a legitimate basis for equitable tolling of the administrative filing deadlines, which were enacted to allow the federal government to efficiently investigate and potentially address discrimination complaints prior to the expense of dealing with civil litigation. *See, e.g., Frederique-Alexandre v. Dep't of Nat. and Env. Resources of the Commonwealth of Puerto Rico*, 478 F.3d 433, 440 (1st Cir. 2007) (holding that alleged futility in pursuing Title VII administrative exhaustion requirements is not sufficient to excuse failure to meet deadlines under "narrow" equitable tolling doctrine). Although plaintiff may have believed that filing a complaint was not a channel that would provide her with the relief for her discrimination complaints that she desired, doing so would have preserved her right to pursue a civil action in this Court in relatively short order–either 90 days after an adverse decision by the agency, or after 180 days from filing the formal complaint, if no action was taken. 42 U.S.C. § 2000e-16(c).

Accordingly, even if the *pro se* plaintiff had properly pled her discrimination complaints against the proper defendants under Title VII, this Court would still be compelled to dismiss the complaint for failure to properly and timely exhaust her administrative remedies.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the complaint is GRANTED and the complaint is dismissed, with prejudice. This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438 (1962). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:     August 17, 2009
           Central Islip, New York

\* \* \*

Plaintiff appears *pro se*. The attorney for defendants is Benton J. Campbell, Esq., United States Attorney for the Eastern District of New York by Robert B. Kambic, Esq., Assistant United States Attorney for the Eastern District New York, 610 Federal Plaza, 5th Floor, Central Islip, NY 11722.